2009 OK CIV APP 75

Cornel Henry WILLIAMS, Special Administrator of the Estate of Blaine Danielle Williams, Plaintiff/Appellant,

v.

NEW BEGINNINGS RESIDENTIAL CARE HOME and Blue Sky Behavioral Health, Inc., Defendants/Appellees.

No. 106,294.

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 9, 2009.

Otis W. Williams, Jr., Tulsa, OK, for Appellant.

Roger N. Butler, Jr., Don W. Danz, Secrest, Hill & Butler, Tulsa, OK, for Appellee New Beginnings Residential Care Home.

Renée DeMoss, Mia Vahlberg, Gable Gotwals, Tulsa, OK, for Appellee Blue Sky Behavioral Health, Inc.

DEBORAH B. BARNES, Presiding Judge.

¶1 This appeal was filed by Cornel Henry Williams, Special Administrator of the Estate of Blaine Danielle Williams (Williams), from the trial court's order, filed August 19, 2008, granting his Motion to Reconsider, in which the trial court declined to disturb its order, filed July 8, 2008, granting summary judgment to Appellees New Beginnings Residential Care Home (New Beginnings) and Blue Sky Behavioral Health, Inc., (Blue Sky) in Williams' wrongful death action against them for the death of his adult daughter while she was a resident of New Beginnings. We affirm.

## BACKGROUND

¶2 On May 2, 2005, Blaine Danielle Williams (Blaine), a resident of New Beginnings, was reported missing from the residential care facility. Her body was found several months later on the wooded grounds of the facility. According to the medical examiner, Blaine committed suicide.

¶3 Upon the advice of her mother, Brenda Williams, Blaine had voluntarily entered New Beginnings in February 2005. New Beginnings is a residential care home, licensed to provide supportive assistance. It is not a locked door facility;[1] however, the "Resident Contract" between Blaine and New Beginnings, dated February 9, 2005, states, in part, that New Beginnings "shall provide the following services to all residents ... ordering and administration of medications."[2]

---

1.  Defendant New Beginnings' Motion for Summary Judgment, Exh. E, "New Beginnings Residential Care Home Confused and Wandering Resident Agreement." This Agreement was executed on March 20, 2005, and signed by Blaine and New Beginnings' Administrator. Apart from stating that New Beginnings is not a locked door facility, Blaine released New Beginnings from any liability for "any injury I may incur when I leave the building on my own accord without the approval or the supervision of the staff of" New Beginnings. The *"Synopsis of the bill of rights,"* "used to supply a consumer ... with an overview of the bill of rights," states, in part: "(7) Each consumer shall receive treatment in the least restrictive environment and have the maximum freedom of movement consistent with his or her clinical condition and legal status." *Id.* at Exh. F.

2.  Plaintiff's Supplemental Response to Defendant New Beginnings' Motion for Summary Judgment, at Exh. 4.

¶ 4 Blue Sky operates a psychiatric and behavioral health care facility. About two weeks after she began living at New Beginnings, Blaine voluntarily applied to receive psychosocial rehabilitation services at Blue Sky upon New Beginnings' referral.[3] She attended group sessions at Blue Sky for nearly two months, four days a week.[4] Her last session was on May 2, 2005.

¶ 5 Williams is Blaine's father and the special administrator of her estate. He had not lived with his daughter since his divorce from her mother when Blaine was 13 years old.

¶ 6 On June 2, 2006, Williams filed a wrongful death action against New Beginnings and Blue Sky for the death of his daughter. He alleged that New Beginnings was under a duty of reasonable and ordinary care to provide a safe facility for his daughter "in the height of her severely deteriorated mental condition," and that she was allowed to exit the facility without any supervision or any procedure to assure her safety.

¶ 7 Williams further alleged Blaine's wrongful death was proximately caused by the negligence of each of the Defendants because they failed to exercise ordinary care: (1) by failing to maintain a safe facility for residents "such as Blaine Danielle Williams;" (2) by failing to train its staff in adequate observation and documentation procedures regarding its residents; (3) by failing to train its staff to deal with detection and control of residents such as Blaine; (4) by failing to comply with certain Oklahoma laws whose provisions provide for the protection of the health, safety and welfare of Blaine; (5) by Blue Sky's failing to supervise the mental health care of Blaine sufficiently so she could not have the time or opportunity to walk away from the New Beginnings facility unsupervised and with the means to hang herself; and (6) by Blue Sky's failing to exercise ordinary care by providing specific instructions to New Beginnings when it knew or should have known Blaine had a substantial likelihood of attempting suicide if not properly supervised and medicated. Williams claimed that as a proximate result of their negligence, he incurred damages for pain and suffering and for medical and burial expenses. He sought both compensatory and punitive damages.

¶ 8 Having answered and denied Williams' allegations of negligence and raised various affirmative defenses, both New Beginnings and Blue Sky filed motions for summary judgment, respectively, on March 17, 2008, and April 30, 2008.[5] Williams filed Plaintiff's Response to Defendant New Beginnings' Motion for Summary Judgment on April 1, 2008, and set forth eight "material facts at issue."[6] Seven of these alleged "material facts at issue" are New Beginnings' asserted failure to *deny facts* that go to the following duties: (1) its duty to provide care for Blaine

---

**3.** Motion of Defendant Blue Sky Behavioral Health, Inc. for Summary Judgment, Affidavit of Patricia Vaught, Exh. E.

**4.** The services Blue Sky provided are described as follows:

> The Blue Sky Clubhouse provides a structured, daily living program for all of its members within a "Clubhouse" environment. Members participate in various work units, which teach a variety of personal and independent living skills, social interaction skills and limited job training. The primary focus of our program is to provide a training ground for members to regain the skills and confidence to become as independent as possible once again. Central to this "training" is the development of personal social interaction skills and independent living skills.

> *Id.* at Exh. F, Blue Sky Clubhouse Manual, at p. 2.

**5.** According to the November 20, 2007, scheduling order, discovery was to be completed on April 15, 2008, and all motions were to be filed by April 30, 2008. Final witness and exhibit lists were due March 1, 2008. The case was set on the May 6, 2008, jury sounding docket.

**6.** Williams also included a Motion to Strike in his response, in which he sought to strike the Affidavit of Brenda Williams because she was not a party to the lawsuit or an employee of New Beginnings. Williams attached a letter from New Beginnings' counsel in which counsel said he could not produce Ms. Williams for a deposition because he had no control over her and that Williams would have to arrange her deposition himself. Plaintiff's Response to Defendant New Beginnings' Motion for Summary Judgment, Exh. 1. She was, however, a witness in the lawsuit. Apparently, this motion was never addressed by the trial court as there is no reference to an order regarding the motion in the record.

Williams and its breach of that duty; (2) its duty to protect Blaine Williams and its breach of that duty; (3) its knowledge of her medical condition and failure to provide proper care; (4) its duty to properly medicate Blaine Williams and its breach of that duty; (5) its duty to provide proper supervision of Blaine Williams and its breach of that duty; (6) its duty to keep dangerous instruments from Blaine Williams and its breach of that duty; and, (7) its duty to conduct a proper search for Blaine Williams and its breach of that duty. The eighth fact, asserted by Williams as material, states: "Further discovery and depositions will show the act[s] and omissions upon which the Plaintiff relies."

¶ 9 Attached as his evidentiary support for these "material facts at issue" is Plaintiff's First Supplemental Discovery to Defendant, New Beginnings.[7] According to the discovery request, New Beginnings was to serve its answers no later than thirty (30) days from service. However, the attachment is an unsigned copy of the discovery request and the Certificate of Delivery, also unsigned, does not reflect a date on which it was served on New Beginnings.[8]

¶ 10 In his Response to New Beginnings' Motion for Summary Judgment, Williams argued New Beginnings "had the duty to provide a safe environment for [Blaine] and to provide for her medical needs"[9] and "had a duty to care for and to protect"[10] her. In his argument, he asserts that "Res Ipsa Loquitur applies—[Blaine] died while in the care of" New Beginnings.[11] New Beginnings filed a reply on April 21, 2008, principally arguing that Williams failed to comply with Rule 13[12] of the Rules for District Courts, by not specifically controverting the facts New Beginnings asserted as uncontroverted in its

motion and the evidentiary materials upon which New Beginnings relied in asserting those uncontroverted facts.

¶ 11 On May 2, 2008, Williams filed a Motion for Extension of Time to Conduct Discovery as to New Beginnings, but not as to Blue Sky.[13] According to the record, Williams had also previously filed a Motion to Compel Discovery against New Beginnings, but New Beginnings had complied with the discovery requests at the time of the May 6, 2008, sounding docket. Thus, the trial court denied the motion to compel, and denied an extension for further discovery against New Beginnings, but did allow Williams an extension until May 20 to file a supplemental response to New Beginnings' summary judgment motion.[14] The trial court also continued the case to the June 3, 2008, jury sounding docket.

¶ 12 On June 3, 2008, Williams still had not filed his supplemental response to New Beginnings' summary judgment motion. At the hearing, the trial judge gave Williams the opportunity to dismiss the case without prejudice and to re-file it within one year, or to have summary judgment granted against him.[15] Williams chose not to dismiss his case. The trial court granted summary judgment by minute order and set a hearing to enter final order on July 8, 2008.

¶ 13 On June 26, 2008, New Beginnings filed its "Submission of Order Granting Summary Judgment," to which it attached its proposed order. The certificate of service evidences it was sent to Williams' counsel. This order was signed and filed on June 27, 2008. On July 8, 2008, the trial court heard and reviewed the content of orders of judgment prepared by Blue Sky. The trial court

---

7.  *Id.* at Exh. 2.

8.  *Id.* at Exh. 2.

9.  *Id.* at p. 1, Statement of Case.

10.  *Id.* at p. 2, Statement of Case.

11.  *Id.* at p. 4, Argument and Authority.

12.  Rule 13, Rules for the District Courts of Oklahoma, 12 O.S. Supp.2002, ch. 2, app.

13.  In fact, Williams never filed a response to Blue Sky's summary judgment motion nor did he ask for any extension of time within which to file a response.

14.  Minute entry, dated May 6, 2008, and order filed May 13, 2008. Williams' Record on Appeal, at tabs 15–16.

15.  Order, filed June 27, 2008, Williams' Record on Appeal, at tab 20.

signed and filed the order submitted by Blue Sky on July 8, 2008.

¶ 14 On July 7, the day before the hearing to enter final order, Williams filed a Motion to Reconsider the granting of summary judgment to both New Beginnings and Blue Sky. He also filed "Plaintiff's Supplemental Response to Defendant New Beginnings['] Motion for Summary Judgment" in which he stated that he "has proof of two specific acts of negligence that caused the death" of his daughter, claiming New Beginnings had a duty to provide a safe environment for Blaine and to provide for her medical needs.[16] He asserted that New Beginnings failed to ensure Blaine was properly medicated and failed to monitor her activities "even though they were aware that she required constant supervision." [17] He argued New Beginnings' negligence was the proximate cause of Blaine's death and again invoked *res ipsa loquitur*, asserting the "foundation facts can be established by expert testimony [or by demonstrating the Defendant's substandard conduct falls within the realm of common knowledge]."

¶ 15 Williams attached several exhibits to this supplemental response. One was a portion of "Staff Progress Notes," dated April 24, 2005, in which Barbara Burdine of New Beginnings noted her conversation with Blaine's mother following a home visit, as follows:

> Mother also stated that she would like for a member of [the] staff to search [Blaine's] room for pain pills. ([Mother] thought Blaine may have brought some back from her home visit). Staff constantly reminds the mother that Blaine needs (24) hour supervision, usually things of this nature happens [*sic*] when she is alone.[18]

Williams also attached a page from Blaine's "Admissions Information" on which her medical condition was listed as "Schizophrenia,

Undiff. chronic w/ acute exacerb." [19] It also stated her legal status as "Comp."

¶ 16 In addition, Williams attached two pages of nurses' medication notes that showed Blaine refused to take valproic acid because she could not swallow the medication on April 1, 2005, and on April 10 and 11.[20] It also showed that on April 27, benztropine was not given because the staff was "out of" the drug. On May 1, 2005, the chart states benztropine was not given because the staff was "awaiting refill." According to the chart, the pharmacy delivered that drug on May 2, the date Blaine left the facility. Williams also attached a portion of the "Resident Contract" between Blaine and New Beginnings, dated February 9, 2005, which states, in part, that New Beginnings "shall provide the following services to all residents . . . ordering and administration of medications." [21]

¶ 17 Also attached was a copy of New Beginnings' Contract for Community–Based Services with the State of Oklahoma—Oklahoma Department of Mental Health and Substance Abuse Services, executed on July 1, 2003,[22] referencing the residential care facility's statement of work to include, in part:

> 10. Contractor shall insure the medical needs of clients are met and maintained in accordance with the highest standards accepted in medical practice. This shall include, but is not limited to ensuring client medications are not allowed to become depleted or be discontinued without a physician's written order in the client's file prior to the depletion or discontinuation. Clients who refuse three (3) doses of medication in a two (2) day time period shall be immediately referred to the prescribing physician for intervention. The Contractor shall take and document reasonable

---

16. Plaintiff's Supplemental Response to Defendant New Beginnings' Motion for Summary Judgment, Statement of Case, at p. 1.

17. *Id.* at p. 2.

18. *Id.* at Exh. 3.

19. *Id.* at Exh. 5.

20. *Id.* at Exh. 2. The nurse's chart indicates in writing that "D=drug not given," and "C=home visit."

21. *Id.* at Exh. 4.

22. *Id.* at Exh. 1.

steps to ensure a client's medications do not become depleted.[23]

¶ 18 In reply to Williams' supplemental response,[24] New Beginnings argued that Williams failed to comply with Rule 13(b), Rules for District Courts, 12 O.S. Supp.2002, ch. 2, app., because he did not controvert the material facts set forth by New Beginnings in either Williams' original response to the motion for summary judgment or in his supplemental response. Further, New Beginnings argued that Williams provided no legal authority, case or statutory, that defines the duty a residential care facility owes to a resident, making any argument that it breached a duty to be without merit. New Beginnings also argued, in part, that even if a duty was owed, Williams failed to establish the foundational facts needed for *res ipsa loquitur* because he offered no expert testimony about how the medications Blaine may not have received would have caused her to commit suicide or that they were taken for any purpose other than to control her schizophrenia. New Beginnings also argues that Williams did not establish that New Beginnings held the needed control over the instrument (Blaine) that caused the injury (her suicide).

¶ 19 New Beginnings submitted the "Medication Administration Records" for Blaine for the months of April and May 2005.[25] New Beginnings argued that those records show that Blaine's prescription for depakote was ordered and administered on April 15, and that benztropine was regularly administered in April and May, 2005. It also attached additional "Staff Progress Notes" that preceded those submitted by Williams.[26] An entry by Ms. Burdine on April 19 noted Blaine's mother had reported that, while Blaine was on her home visit, she had called the fire department because she thought she smelled smoke, without first advising her mother about the call. Another entry dated

April 22 noted that the mother was afraid Blaine may try to attack her while Blaine was with her. New Beginnings also provided the complete entry Williams submitted for April 24. The rest of the entry noted that New Beginnings had received a call from the U.S. Secret Service because Blaine had made a threat against the President via the internet, and the caller stated they would be visiting with Blaine and her mother on April 25. In the next entry, dated May 2, 2005, Blaine is listed as AWOL.

¶ 20 On July 28, 2008, the trial court signed and issued the following Court Minute:

> RULING/FINDING BY COURT: The Court hereby grants Plaintiff's Motion to Reconsider the Defendants' Respective Motions for Summary Judgment & considers Plaintiff's belated response to said motions. The Court hereby grants Defendants' Motions for Summary Judgment. Defendants' respective attorneys to present proposed orders for signature on August 19, 2008 at 1:30 p.m. Also, Application for Costs and Fees of Defendant New Beginnings Residential Care Home set for August 19, 2008 at 1:30 p.m.

¶ 21 On August 19, 2008, the trial court issued a formal order, granting Williams' motion to reconsider, but declining to disturb or alter its previous order filed July 8, 2008.[27] The trial court specifically found that Williams "failed to submit any expert evidence whatsoever to support his claims in this case."

¶ 22 Williams asserts the following issues on appeal: (1) the trial court erred in entering orders without service on counsel; (2) the trial court erred in granting summary judgment; and (3) the trial court erred in granting summary judgment without giving Williams an opportunity to be heard.

---

23. *Id.* at Exh. 1, Addendum F.

24. New Beginnings and Blue Sky also submitted objections to Williams' Motion to Reconsider.

25. Reply of Defendant New Beginnings to Plaintiff's Supplemental Response to New Beginnings' Motion for Summary Judgment, Exh. A.

26. *Id.* at Exh. B.

27. On page 2 of its July 8, 2008, order, the trial court reconfirmed its previous order, filed on June 27, 2008, granting summary judgment to New Beginnings.

## STANDARD OF REVIEW

¶ 23 Summary relief issues stand before the appellate courts for *de novo* review, and all facts and inferences must be viewed in the light most favorable to the non-movant. Just as trial courts "are called upon to do in deciding whether summary relief is warranted in the first instance, so also do appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process as support for the relief granted." *Liddell v. Heavner,* 2008 OK 6, ¶ 7, 180 P.3d 1191, 1196. (Citations omitted.) Whether a cause presents a case for application of the doctrine of *res ipsa loquitur* presents a question of law. *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, 948 P.2d 298. Further, when *res ipsa loquitur* is invoked, the focus on review of the grant of summary judgment is not on the sufficiency of evidence (or evidentiary material), but rather on whether, in light of the applicable pattern of proof which is a plaintiff's due under that doctrine, the record as a whole (a) shows undisputed facts on the material issues and (b) will support a single inference in favor of the movant's request for summary judgment. *Jackson v. Oklahoma Memorial Hospital,* 1995 OK 112, 909 P.2d 765.

## ANALYSIS

### I. *Entry of Orders and Opportunity to be Heard*

¶ 24 Williams asserts on appeal that his counsel had not been served orders entered by the trial court, citing 12 O.S. Supp. 2007 § 696.2(B), and that he was not given an opportunity to be heard before the trial court entered its order granting summary judgment to New Beginnings and Blue Sky. We find both issues to be lacking in merit and without support in the record.

¶ 25 On May 6, 2008, the trial court entered a minute order, allowing Williams to file a supplemental response to New Beginnings' motion for summary judgment and denying his motion to compel discovery from New Beginnings. The minute also reflected that the hearing on the motions for summary judgment would be held on June 3, 2008. Williams states that on May 6, the trial court, in open court, granted him leave to file a supplemental response.[28] On May 13, the trial court filed an order memorializing the rulings reflected in the trial court's May 6 minute, except that, in the order, the due date for the supplemental response was specifically stated as May 20. Williams' prior request for an extension of discovery and motion to compel were denied. Although Williams' counsel was at the hearing on May 6, he makes various conflicting claims about what he knew or did not know.

¶ 26 Williams argues that his lawyer was told by the trial court's bailiff on May 20, 2008, that he had been given 30 days from May 20 to file a supplemental response to New Beginnings' Motion for Summary Judgment.[29] He also claims, in a "Motion for Extension of Time to Comply" he filed on May 28, that the trial court's ruling of May 5, 2008 only denied the motion to compel, not the motion to extend discovery and did not set a date for the supplemental response to be filed. He also states, "Court rules clearly provide that all Orders must be approved by opposing Counsel which was not done in this instance since the proposed order was inaccurate." He does not claim he did not know about the May 13 order nor that he was given no chance to correct any errors; he only claims he did not sign it because he thought it was inaccurate.

¶ 27 Further, on July 7, 2008, Williams filed a Motion to Reconsider in which he then claimed that the May 6 ruling gave him until June 3 to file his supplemental response, and that his May 28 motion for an extension of time to file that supplemental response was filed pursuant to the bailiff's directive of May 20.[30] However, Williams' May 28 Motion for

28. Petition in Error, Exh. B., Summary of Case.

29. Although Williams has, several times, referred to supplemental "responses," he only filed a response to New Beginnings' Motion for Summary Judgment. The only response he could, therefore, be requesting to supplement is the response to New Beginnings' Motion for Summary Judgment, not to Blue Sky's.

30. In his July 7, 2008, Motion to Reconsider, he states that:

Extension of Time to Comply does not reference this May 20th conversation with the bailiff and specifically asks the trial court to "vacate its Order of May 13, 2008 establishing a date certain for filing supplementary responses...." He claims in that motion that the trial court imposed no date certain for filing of the supplemental response, though in the July 7 motion to reconsider, he asserts the May 6 minute shows he had until June 3 to file his supplemental responses.

¶ 28 Williams' own motions contradict each other as to what the trial court's orders meant. Moreover, none of his motions nor the record support any assertion that the trial court entered orders in violation of 12 O.S. Supp.2007 § 696.2(B), which provides, in part, as follows:

> A file-stamped copy of every judgment, decree, or appealable order shall be served upon all parties, including those parties who are in default for failure to appear in the action, by the counsel for a party or party who prepared it, or by a person designated by the trial court, promptly and no later than three (3) days after it is filed.

¶ 29 Williams' May 28 motion did not say he was not provided a copy of the May 13 order. He only claimed he did not sign it because he said it was inaccurate.

¶ 30 It is from Williams' reliance on the bailiff's statement that he had until June 20 to file his supplemental response, despite what he knew from the trial court's statements in open court and the minutes and orders filed by the trial court, that Williams claims he was denied an opportunity to be heard before the trial court's grant of summary judgment. We disagree.

¶ 31 Williams relies on the May 6 minute and was present at the May 6 hearing. From both, he knew the hearing on the motions for summary judgment were set for hearing on June 3. His assertion that a bailiff told him he had until June 20 or thereabouts to file his supplemental response strains credulity.

¶ 32 Moreover, despite knowing that the motions for summary judgment were set to be heard on June 3, and despite having asserted in a prior motion that he had until June 3 to file his supplemental response, Williams filed no supplemental response on June 3. Further, Williams' Summary of the Case on appeal is misleading. He asserts that:

> On June 3, 2008, the Court granted Defendant New Beginning[s'] Motion for Summary Judgment and *by Default, despite given Supplemental Time to Respond, granted Blue Sky's Motion for Summary Judgment.*[31]

¶ 33 Williams never sought, nor was given, "supplemental time" to file a response to Blue Sky's Motion for Summary Judgment, filed April 30, 2008. Williams never responded to Blue Sky's motion. The May 6 minute, reflecting what occurred at the hearing at which Williams was present, allowed him to file a "supplemental response" to New Beginnings' Motion for Summary Judgment. "Supplemental time" and "supplemental response" are not phrases of interchangeable meaning.

¶ 34 Williams was present for the June 3 hearing on the motions for summary judgment and knew that a hearing to enter a final order was set for July 8, 2008, at 1:30 p.m.

3. On 05/06/08 the Court extended until 06/03/08 for Plaintiff to file supplemental responses to Defendant[s'] Motions for Summary Judgment. The minute of 5/06/08 correctly notes that Plaintiff's Motion to Compel was denied. The minute of 5/06/08 did not reflect that the supplemental responses were due by May 20, 2008.
4. In a minute dated 05/15/08, almost ten (10) days after the [*sic*] 05/06/08, the Court established May 20, 2008 as the date certain for filing supplemental responses.
5. Plaintiff checking the docket periodically noted the new notation and called the Court on May 20, 2008 about an extension for this newly

discovered reference date. The Judge's bailiff returned Plaintiff's call and noted that the Court had extended the time for compliance for thirty (30) days from May 20, 2008.
6. Plaintiff filed a Motion for Extension of [T]ime to Comply on 05/28/08, pursuant to the bailiff's telephone declaration.
We note that the record on appeal shows no minute of May 15, referenced in paragraph "4." of the Motion to Reconsider, only the order of May 13.

31. Petition in Error, Exh. B, Summary of Case. (Emphasis added.)

On June 25, a proposed order granting summary judgment to New Beginnings was mailed to Williams and filed with the court clerk on June 26. Williams still had not filed his supplemental response. On June 27, 2008, the trial court entered the order granting summary judgment to New Beginnings. On July 8, Williams failed to appear at the hearing for the entry of the trial court's final order. It was not until one day before the previously scheduled July 8 hearing, after entry of order granting summary judgment to New Beginnings, that Williams even filed his supplemental response, along with a Motion to Reconsider. The Motion to Reconsider acknowledges that summary judgment had been granted.

¶ 35 In spite of Williams' failure to submit his supplemental response to New Beginnings' Motion for Summary Judgment well beyond the June 20 date he claims he had in which to file that response, and despite his failure to attend the July 8 hearing, the trial court still considered Williams' motion to reconsider and his supplemental response. Williams had every opportunity to be heard on his objections to the grant of summary judgment to New Beginnings and Blue Sky.

¶ 36 We, therefore, find the trial court committed no error with respect to the entry of its orders as to service upon Williams' counsel and as to the opportunity for Williams to present his arguments opposing the grant of summary judgment in favor of New Beginnings and Blue Sky.

## II. The Propriety of the Granting of Summary Judgment

### A. New Beginnings

¶ 37 Relying on authority pertaining to the duty of care hospitals and nursing homes owe to their patients, Williams asserts that New Beginnings owed his daughter a duty to use ordinary and reasonable care to provide her with a safe environment and to provide for her medical needs. He relies on the doctrine of *res ipsa loquitur* because his daughter

died while in "its care" after being permitted to take an unsupervised walk around the facility and after she had not been administered one of her medications for a week prior to that event. Inasmuch as Williams has failed to offer needed expert testimony and otherwise failed to establish foundational facts required for *res ipsa loquitur*, we affirm the grant of summary judgment to New Beginnings.

¶ 38 Whether a case is fit for the application of *res ipsa loquitur* presents a question of law, and it is the court's function to determine if a given inference may be drawn from a proffered set of circumstances. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, 948 P.2d 298. While *res ipsa loquitur* is an evidentiary rule, the effect of which is to raise a rebuttable inference that allows a plaintiff to take his or her case to a jury, as in all negligence cases, there must be a duty owed by the defendant to the plaintiff. *See, e.g., Jackson v. Oklahoma Memorial Hospital*, 1995 OK 112, 909 P.2d 765.

¶ 39 Once a duty is established, *res ipsa loquitur* aids the plaintiff to make a *prima facie* case for negligence against the defendant in instances where, "because of the peculiar circumstances, direct proof of why the accident happened (as distinguished from what caused the accident) is beyond the power of the plaintiff but should be in the power of the defendant. . . ." *St. John's Hospital & School of Nursing, Inc. v. Chapman*, 1967 OK 126, ¶ 17, 434 P.2d 160, 166–67. The rule accomplishes this aid by allowing the jury to legitimately deduce that the defendant had failed to exercise ordinary care under the circumstances.[32]

¶ 40 Negligence may be inferred from the injurious occurrence without the aid of circumstances pointing to the responsible cause once the foundational facts have been established. *Harder*, at ¶ 8, 948 P.2d at 303. The foundational facts that must be shown to permit the inference of negligence are: (1)

---

**32.** The Court in *St. John's Hospital & School of Nursing, Inc.* concluded that *res ipsa loquitur* could be applied where the plaintiff's leg was broken as she was turned in her hospital bed at a time when she was unconscious and in the con-trol and care of the defendant hospital, and direct proof of the hospital's negligence was beyond the power of the plaintiff. *Id.* at ¶ 29, 434 P.2d at 169.

the injury is one that does not occur in the course of everyday conduct; (2) the defendant has exclusive control over the instrumentality or circumstance that caused the injury; (3) evidence of the true cause of the injury is more accessible to the defendant than to the plaintiff; and (4) the circumstances attendant to the harmful event are not likely to cause injury unless the defendant is negligent. *Id.* at ¶ 8, n. 12, 948 P.2d at 303, n. 12. (Citations omitted.) However, "the mere fact that an accident has occurred under mysterious or unexplained circumstances provides no basis for application of the doctrine" of *res ipsa loquitur* and lack of knowledge as to the cause of injury does not call its operation into play. *St. John's Hospital & School of Nursing, Inc.*, at ¶ 9, 434 P.2d at 165. (Citations omitted.)

¶ 41 Williams has offered no authority that establishes the duty of care owed by a residential care facility to its residents. Instead he relies on cases involving the standard of care owed by hospitals and nursing homes as establishing a duty New Beginnings owed to Blaine. He relies on *Harder*, in which the Oklahoma Supreme Court stated, "A hospital has the duty to provide for the care and protection of its patients, and in the performance of this duty the hospital is required to exercise such reasonable care as the patient's known condition requires." *Harder*, at ¶ 11, 948 P.2d at 304. With respect to its residents, the *Harder* Court also found that:

[A] nursing home stands in a relationship similar to that which a hospital occupies [toward] its patient. A resident is under the control and in the care of an entity to which his (or her) safety is entrusted. A nursing home has a duty to provide care at a reasonable standard, taking into consideration the resident's known mental and physical condition.

*Id.* Thus, the Court found that in the context of health care litigation, *res ipsa loquitur* "may, *upon proof of the foundation elements,* also be followed in lawsuits against nursing homes." *Id.* (Emphasis in original.)

**33.** For a discussion of the differences between these two types of licensed facilities under Oklahoma statutory and administrative law, *see, Gil-*

¶ 42 However, Oklahoma statutory law and administrative regulations promulgated to implement those statutes clearly delineate the different nature and scope of the services provided by nursing homes and residential care facilities.[33] The Residential Care Act, 63 O.S. Supp.2003 § 1–820(12), defines a residential care home as:

[A]ny establishment or institution which offers, provides or supports residential accommodations, food service, and supportive assistance to any of its residents or houses any residents requiring supportive assistance who are not related to the owner or administrator of the home by blood or marriage. A residential care home shall not include:

. . . .

(5) a residential mental health facility operated by the Department of Mental Health and Substance Abuse Services,

. . . .

The residents of a residential care home shall be ambulatory and essentially capable of participating in their own activities of daily living, but shall not routinely require nursing services. . . .

¶ 43 The Nursing Home Care Act, 63 O.S. Supp.2004 § 1–1902(10), on the other hand, defines a nursing facility as:

[A] home, an establishment or an institution, a distinct part of which is primarily engaged in providing:

a. skilled nursing care and related services for residents who require medical or nursing care,

b. rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or

c. on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services beyond the level of care provided by a residential care home and which can be made available to them only through a nursing facility.

*logly v. General Electric Capital Assurance Co.,* 430 F.3d 1284 (10th Cir.2005) (discussing the definition of insurance contract terms).

The act further states that the term "facility ... shall not include a residential care home...." *Id.* at § 1–1902(9).

¶ 44 The administrative code provisions regarding residential care homes state:

These Standards and Regulations are promulgated as provided for by the Residential Care Act, 63 O.S. Section 1–820 through 1–840 to establish the minimum criteria for the issuance or renewal of a residential care home license. In addition, these standards and regulations provide the criteria which will be used in enforcing the provision[s] of the Act as necessary to protect the health, safety and welfare of the residents and to assure respect for their rights, dignity and comfort.

Okla. Admin. Code § 310.680–1–1. It defines "Supportive assistance" as meaning:

[T]he service rendered to any person which is sufficient to enable the person to meet an adequate level of daily living. Supportive assistance includes but is not limited to housekeeping, assistance in the preparation of meals, assistance in the safe storage, distribution and administration of medications, and assistance in personal care as is necessary for the health and comfort of such person. The term "supportive assistance" shall not be interpreted or applied so as to prohibit the participation of residents in housekeeping or meal preparation tasks as a part of the written treatment plan for the training, habilitation or rehabilitation of the resident prepared with the participation of the resident, the mental health or drug or alcohol services case manager assigned to the resident and the administrator of the facility,

or his designee. *Supportive assistance shall not include medical service.*

*Id.* at § 310:680–1–2. Definitions. (Emphasis added.) Further, in delineating the rights and responsibilities of residents of residential care facilities, it provides: "Every resident shall be free from mental and physical abuse, *and from physical* and chemical *restraints* as provided by the program certification standards." *Id.* at § 310:680–19–2(9). (Emphasis added.) Personal care is defined as meaning:

[A]ssistance with meals, dressing, movement, bathing or other personal needs or maintenance or *general supervision of the physical and mental well-being of a person* who is capable of maintaining a private, independent residence, or who is incapable of managing his person whether or not a guardian has been appointed for such person.

*Id.* at § 310:680–1–2. (Emphasis added.)

¶ 45 The Resident Contract between Blaine and New Beginnings incorporates the provisions of the administrative code, particularly the *"Synopsis* of the bill of rights" in which the rights and privileges of residents are set out. The Resident Contract stated that New Beginnings would not supervise her activities at times she chose to leave the facility. Blaine's legal status was one of competence, according to the Applicant Information Williams submitted.

¶ 46 Thus, the duty New Beginnings owed to Blaine must be determined from the circumstances in which they were involved with one another; that is, as a residential care home and a competent resident suffering from schizophrenia.[34] New Begin-

---

34. We agree with the position asserted by New Beginnings that Williams failed to comply with the requirements of Rule 13(b) in both his response and supplemental response to New Beginnings' Motion for Summary Judgment. After a motion for summary judgment has been filed, the adverse party may object to the granting of the motion. Pursuant to Rule 13(b):

Any party opposing summary judgment ... shall file with the court clerk within fifteen (15) days after service of the motion a concise written statement of the material facts as to which a genuine issue exists and the reasons for denying the motion.... Unless otherwise ordered by the court, the adverse party shall attach to

the statement evidentiary material justifying the opposition to the motion, but may incorporate by reference material attached to the papers of another party.

In Williams' argument and authorities, he asserts "there are many unresolved issues that require a trial by jury;" however, he failed to comply with the mandate of Rule 13(b).

In the statement, the adverse party ... shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials.

Nor did he remedy that failure by providing the type of statement referenced in Rule 13(b)

nings had a duty to engage in no act or omission that would be a direct and proximate cause of any physical or mental injury to Blaine.[35] New Beginnings undertook a duty to order and administer her medications, to keep appropriate records regarding the administration of medication, and to contact her physician should she fail to take prescribed medications. It had an obligation to monitor those medications. Okla. Admin. Code § 310:680-13-1. It obligated itself to provide her supportive services, but those services specifically excluded "medical service" according to the administrative criteria "used in enforcing the provision[s] of the [Residential Care] Act as necessary to protect the health, safety and welfare of the residents." Those services, however, included personal care, including "general supervision" of her physical and mental well-being. New Beginnings had no duty, nor right, to physically restrain Blaine.

¶ 47 In relying on *res ipsa loquitur*, Williams asserts that New Beginnings failed to monitor Blaine's activities and allowed her to leave the facility unsupervised though it knew she needed 24-hour supervision. Thus, because she died while unsupervised, New Beginnings must have been negligent. Taking all of the evidentiary materials submitted by New Beginnings and Williams in the light most favorable to this asserted basis for negligence, and taking as true that Blaine needed 24-hour supervisory care, no evidence has been offered that the supervision Blaine needed was because she was suicidal. Williams has not established that New Be-

ginnings exercised exclusive control over Blaine or was under a duty to monitor her activities for anything other than her schizophrenia.

¶ 48 The uncontroverted facts reveal that Blaine voluntarily admitted herself to New Beginnings, a non-locked door facility, and was free to leave the facility at any time she chose. She had several home visits in the month preceding her suicide; she frequently took unsupervised walks outside the facility; and she was in a facility that monitored its residents but with minimal restraint. The facility had no knowledge that Blaine had suicidal tendencies; in fact, all the medical information it had stated she had no suicidal ideation. No facts have been presented that establish New Beginnings controlled Blaine. Further, no facts have been presented that establish New Beginnings was expected to do so.

¶ 49 Moreover, the administrative regulations governing the licensing of residential home facilities to which Williams refers by his reliance on the New Beginnings' contract with the State Department of Health, defines monitor to mean "watch, observe, check and keep track of for a special purpose." Okla. Admin. Code § 310:680-1-2. It is undisputed that Blaine suffered from schizophrenia and that she voluntarily committed herself to New Beginnings for that illness. There are no facts presented by Williams that show New Beginnings would monitor Blaine for any purpose other than for her schizophrenia.

when he filed Plaintiff's Supplemental Response to New Beginnings' Motion for Summary Judgment three months later, and after New Beginnings filed its response to his discovery requests. Thus, pursuant to Rule 13(b):

All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment ... unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment ... is granted, the party ... opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.

Consequently, under Rule 13(b), if a party fails to respond, that failure results in an admission,

for purposes of summary judgment of all material facts set forth in the movant's statement which are supported by admissible evidence. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court). The trial court properly examined the evidentiary materials supporting New Beginnings' summary judgment motion and found the material facts were addressed and supported by admissible evidence.

35. "Neglect" is defined as meaning: "any act of omission or commission by any ... person under the employment, supervision or control of" the facility, "and which act is the direct and proximate cause of any physical or mental injury to a resident." Okla. Admin. Code § 310:680-1-2.

¶ 50 Williams' theory also appears to be that Blaine's behavior in the weeks preceding her death should have alerted New Beginnings' staff to suicidal behavior not previously diagnosed. Whether Blaine's actions during her home visits in April should have put New Beginnings on notice that this previously nonsuicidal resident was now exhibiting suicidal tendencies, and whether its failure to recognize those signs and take corrective action fell below the standard of care owed to its resident, requires expertise beyond that of common experience.

¶ 51 Expert testimony must be adduced where any foundational fact requires a degree of skill or knowledge not possessed by the average person. *Harder*, at ¶ 14, 948 P.2d at 305. The rationale for this rule is that a trier of fact must have sufficient technical and scientific evidence at his or her disposal to answer scientific or technical questions of fact. *Boxberger v. Martin*, 1976 OK 78, 552 P.2d 370. Blaine's actions may have been unusual or perhaps consistent with her mental illness. The medical or psychological implications of such behavior, however, require expert testimony to offer guidance to a jury in assessing whether New Beginnings met, or not, the applicable standard of care for such facilities with respect to a resident suffering from schizophrenia.

¶ 52 Williams also argues that New Beginnings breached its duty to Blaine to order and administer her medications and that its breach of that duty was the proximate cause of her suicide. In relying on *res ipsa loquitur*, Williams contends that the apparent failure of New Beginnings to administer at least one of her medications is sufficient to allow his claim to go to the jury. We disagree.

¶ 53 Expert medical testimony is not required to establish the cause of an objective injury where there is competent evidence, without such testimony, to establish the cause with reasonable certainty. In *Bar-*

*nett v. Richardson*, 1966 OK 101, ¶ 4, 415 P.2d 987, 990, the Oklahoma Supreme Court stated:

> Where an injury is patent, objective rather than subjective, the plaintiff is competent to testify as to the injury, the treatment received therefor, and the reaction of such treatment, and this testimony is sufficient for the jury to render a verdict . . . and no expert medical testimony is necessary.

¶ 54 Even if Williams' version of Blaine's medication chart is accepted as true,[36] the only duty of care that New Beginnings owed to Blaine which the record supports was to order and administer her medications. Thus, the apparent nonadministration of benztropine on April 27 through May 2 may be a breach of that duty. However, Williams refused to provide any evidence regarding benztropine and how its nonadministration in the week preceding her death led to Blaine's suicide. Whether New Beginnings' failure to administer that medication fell below some standard of care that proximately lead to her death, is not one based on common knowledge. Even if the failure to give a medication the defendant had an obligation to administer could be understood by lay persons as failing to meet even a minimal standard of care—as an objective fact—expert testimony is needed to advise the jury what the medication was for and what its absence for several days might do, given Blaine's mental illness.[37] The purposes and effects of medications, or removal of particular medications, are matters of scientific and technical knowledge. *Spivey v. Atteberry*, 1951 OK 225, 205 Okla. 493, 238 P.2d 814. We find that the trial court properly considered the affidavits, deposition testimony, and other evidentiary materials submitted by New Beginnings and Williams and properly determined that no issues of material fact were in dispute and that New Beginnings was entitled to judgment as a matter of law.

---

36. Actually, the Medication Administration Records supplied by New Beginnings appears to show that benztropine was not administered from April 27 through May 2. The letter "D" appears in the boxes for those dates and is, apparently, the staff's notation for "drug not given." *See*, Plaintiff's Supplemental Response, Exh. 2.

37. We also note that Williams has offered no evidence concerning the first foundational fact for *res ipsa loquitur*; that is, that suicide of a schizophrenic resident does not usually occur in a residential care facility. That fact is not addressed at all by Williams.

## B. *Blue Sky*

¶ 55 Williams never filed any response to Blue Sky's Motion for Summary Judgment. In support of Blue Sky's motion and statement of undisputed facts, it appended various evidentiary materials. The trial court specifically considered this evidentiary material in finding that no material issues of fact remained as between Blue Sky and Williams and that Blue Sky was entitled to judgment as a matter of law. We agree.

¶ 56 Although Williams failed to file a counterstatement to Blue Sky's motion, this Court is still obligated under District Court Rule 13(b), as was the trial court, to determine if Blue Sky's motion was meritorious.

The granting of summary judgment ultimately depends upon a determination by the trial court of whether there is a substantial controversy as to any material fact. Even when no counterstatement has been filed, it is still incumbent upon the trial court to insure that the motion is meritorious. The trial court must examine the evidentiary materials supporting the motion and if all the material facts are addressed and are supported by admissible evidence, those facts are admitted and judgment for the movant is proper.

*Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685.

¶ 57 The trial court's July 8 order specifically states it reviewed the evidentiary material submitted by Blue Sky (and New Beginnings), found the material facts were addressed in its motion and were supported by admissible facts. The July 8 order also states that the trial court found Williams offered no admissible evidence against Blue Sky of a specific legal duty it owed to Blaine and breach of that duty. Williams also failed to provide any evidence that Blaine had suicidal tendencies or that Blue Sky knew or should have known of such tendencies, and he failed to prove damages as a result of any violation of duty by Blue Sky.[38]

## CONCLUSION

¶ 58 Upon our review of the record and applicable law, we find the trial court's granting of the Motion to Reconsider, in which the trial court declined to disturb its grant of summary judgment to New Beginnings and to Blue Sky should be, and hereby is, affirmed.

¶ 59 **AFFIRMED.**

WISEMAN, V.C.J., and GOODMAN, J., concur.

38. In the order filed August 19, 2008, in which the trial court considered Williams' supplemental response against New Beginnings, the court specifically stated: "The Court declines to disturb or alter its previous order filed on July 8, 2008 and grants summary judgment in favor of Blue Sky...."